GILBERT et al. vs. NEELY, Ad., et al.

1. HOMESTEAD EXEMPTION: *Constitution of* 1868. *Fiduciary debts.*
   By the constitution of 1868 the homestead was not, in the lifetime of the debtor, exempted from debts created by him in a fiduciary capacity.

2. SUBROGATION: *Sureties in guardian's bond. Parties.*
   The sureties in a deceased guardian's bond who are compelled to pay to the ward his money in the guardian's hands at the time of his death, may be subrogated to the ward's remedies against the heirs.

and representatives of the deceased guardian, and subject, as he might have done, the guardian's homestead to the satisfaction of the demand. In a suit for this purpose the widow and heirs of the guardian are necessary parties.

APPEAL from *White* Circuit Court in Chancery.
Hon. J. N. CYPERT, Circuit Judge.
*Turner, for appellant.*
*Coody, contra.*

HARRISON, J.　Webster Gilbert and William C. Roscopf filed their complaint in equity against Asaph Neely, as administrator of Wyatt Sandford, deceased, Susan G. Sandford, and certain other persons, but what interest they had in the subject of the suit, or why they were made parties, not in any way appearing, their names need not be mentioned, in which they alleged that Wyatt Sandford was, on the twenty-first day of April, 1866, appointed by the probate court of White county guardian of Vivian W. Weir, a minor, and that the plaintiffs and John B. Humphries became sureties for him in his bond. That he, at the April term, 1870, of the court, filed an account of his guardianship, which was confirmed at the following October term, whereby it was shown he had in his hands $750.54 in money belonging to his ward; that that was the last account filed by him, and he died about the twenty-ninth day of April, 1872, intestate, leaving a widow— the defendant, Susan G. Sandford—and the defendant, Asaph Neely, had been appointed his administrator. That after the death of said Sandford, James Weir was appointed guardian of said minor; and that he, as such guardian, exhibited a claim against said Sandford's estate in favor of his ward for $575.20, money in his hands at the time of his death, which was allowed by the administrator,

and at the September term, 1873, classed by the court in the fourth class of claims against the estate.

That the estate was insolvent and there were no assets to pay them.

That suit was brought in the White circuit court on Sandford's bond against the plaintiffs and the said Humphries for the recovery from them of the claim, and judgment was, at the July term, 1876, recovered against them for the sum of $667.78, amount of principal and interest thereof, and that the plaintiffs had paid and satisfied the judgment.

And that said Sandford was, at the time of his death, the owner of a homestead in the town of Searcy, which was described, not taken into the administration of his estate, but which was subject to the payment of said Vivian W. Weir's claim.

They prayed that they be subrogated to Vivian W. Weir's right against the homestead, and that it be sold for their exoneration, and to reimburse them the money they had paid.

Whether Sandford left minor children, or who his heirs were, was not shown.

The defendants filed a demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer and dismissed the complaint.

The plaintiffs appealed.

1. HOME-STEAD EX-EMPTION: Constitution of 1868. Fiduciary debts.

The constitution of 1868 was in force at the death of Sandford, when his widow and his minor children, if he left any, became vested with their homestead right, and the decision of the case must therefore be governed by its provisions.

Section 3, of Article XII, of it, was as follows:

"Section 3. Every homestead not exceeding one hundred and sixty acres of land, and the dwelling and appurtenances thereon to be selected by the owner thereof, and not in any town, city or village; or in lieu thereof, at the option of the owner, any lot in a city, town or village, with the dwelling and appurtenances thereon, owned and occupied by any resident of this state, and not exceeding the value of five thousand dollars, shall be exempted from sale on execution, or any other final process from any court; but no property shall be exempt from sale for taxes, for the payment of obligations contracted for the purchase of said premises, for the erection of improvements thereon, or for labor performed for the owner thereon. *Provided,* That the benefit of the homestead herein provided for shall not be extended to persons who may be indebted for dues to the state, county, township, school or other trust funds."

It is very clear that the homestead was not in the lifetime of the debtor exempt from the debts created by him in a fiduciary capacity; but it is insisted by the appellees, and such we presume was the view taken of it by the court below, that section 5, of the same article, upon the death of the debtor, exonerated it in favor of his widow and minor children from all debts whatever.

The section, we think, does not admit of such a construction. All the provisions of the constitution upon the subject must be construed together.

The immediately preceding section, or section 4, exempted, when upon the death of the debtor there were no children, the homestead, and gave the widow the rents during the time of her widowhood, unless she had a homestead in her own right. Section 5 was as follows:

"Section 5. The homestead of a family, after the death

of the owner thereof, shall be exempt from the payment of his debts, in all cases, during the minority of his children, and also, so long as his widow shall remain unmarried, unless she be the owner of a homestead in her own right."

The seeming ambiguity in this section is removed by construing the phrase *in all cases*, as relative alone to the clause, " *during the minority of his children*," to which it grammatically and appropriately belongs, and as exclusive of any condition of their enjoyment. . The exemption in favor of the widow, and her right to the rents and profits, when there were no children, depended upon her remaining unmarried and having no homestead of her own; but, in favor of minor children it depended upon no condition whatever—they might have had homesteads in their own right besides, and if daughters, there was no forfeiture, as in the case of the widow, upon their marriage.

With this construction of section 5, the several provisions of the constitution are in harmony and consistent with each other.

The widow and minor children, if there were minor children, did not, upon the death of the husband and father, succeed to a right more extensive, except as to the condition of occupancy, than he possessed. *Thomp. on Homesteads, sec. 547.*

2. SUBRO-GATION. Sureties in guardian's bond subrogated to ward's remedies. And the plaintiffs, having been compelled as sureties of Sandford to pay Weir. his late ward. the money of his in his hands, as his guardian at the time of his death, were entitled to be put in the place of Weir, as to his remedies against his representative or heirs, and to enforce their right of exoneration to subject, as he might have done, the homestead, to the satisfaction of the demand. *Bishpam Eq., sec. 335; 1 Story, Eq. Jur., secs. 567, 635, 638;*

*Newton v. Field, 16 Ark., 216; Talbot et al. v. Wilkins et al., 31 Ark., 411; Pickett et al. v. Merchants' National Bank of Memphis et al., 32 Ark., 346.*

There was, therefore, sufficient equity in the complaint; but the heirs of Sandford, as well as his widow, were necessary parties, and without their being before the court, the plaintiffs could have no relief. Most probably it was intended and attempted to make them parties, and that the defendants, whose interest was not stated in the complaint, are his heirs, and the averment as to them and their interest was inadvertently omitted.

*Necessary parties.*

But the complaint should not have been dismissed absolutely, but should have been without prejudice to the bringing of another suit against proper parties.

The decree is reversed, and the cause remanded, with direction to allow the plaintiffs to amend their complaint and make the heirs parties, if so advised, and for further proceedings; and, if not so amended, to dismiss the complaint without prejudice.