RICHARD R. HANTZCH v. MARY MASSOLT and Others.[1]

June 17, 1895.

Nos. 9310—(138).

Estate of Decedent—Contingent Claim.

Sections 104, 107, and 110 of the Probate Code (G. S. 1894, §§ 4511, 4514, 4517), construed, and *held*, that a contingent claim, arising on contract against the estate of a decedent, which does not become absolute and capable of liquidation before the time limited for creditors to present their claims to the probate court for allowance, is not barred because it was not so presented; and the holder of such a claim, after it becomes absolute, may maintain an action against the heirs, next of kin, legatees, or

[1] Reported in 63 N. W. 1069.

| 61 | 361 |
| 61 | 522 |
| J61 | 526 |
| 61 | 361 |
| f66 | 210 |
| 66 | 250 |
| 61 | 361 |
| 69 | 206 |
| 61 | 361 |
| 70 | 522 |
| 61 | 361 |
| 72 | 234 |
| 61 | 361 |
| 75 | 489 |
| 61 | 361 |
| 77 | 61 |
| 61 | 361 |
| 80 | 437 |
| 61 | 361 |
| 82 | 259 |
| 61 | 361 |
| 83 | 201 |
| 83 | 202 |
| 61 | 361 |
| 84 | 383 |
| 61 | 361 |
| 85 | 136 |

devisees to whom the residue of the estate has been distributed, to recover such claim to the extent of the estate received by them.

### Same—Claim against Sureties on Guardian's Bond.

*Held*, further, that a claim against the estates of deceased sureties on the bond of a guardian whose account as such had not been allowed and settled by the probate court, when the time expired for presenting claims against their respective estates, is such a contingent claim.

### Action on Guardian's Bond—Leave to Sue.

In an action upon a guardian's bond the complaint does not fail to state a cause of action because it omits to allege that permission to prosecute the bond has been obtained from the judge of probate.

Appeal by plaintiff from an order of the district court for Hennepin county, Smith, J., sustaining demurrers to the complaint. Reversed.

*McHale & Abell*, for appellant.

*Witchie & Bleecker*, for respondents next of kin and heirs at law of William Massolt.

*Kitchell, Cohen & Shaw*, for respondents devisees and legatees of John Heinrich.

START, C. J. Appeal by plaintiff from an order sustaining the demurrers of the defendants to his complaint, the material allegations of which are as follows: That on January 23, 1885, the plaintiff was a minor, and on that day John P. Noel was appointed his guardian by the probate court of the county of Hennepin, who accepted the trust, and executed to the judge of such court a guardian's bond in the penal sum of $1,000, with William Massolt and John Heinrich as sureties, which contained the conditions required by law. That Noel received as such guardian the sum of $843.28, the property of the plaintiff, but wholly disregarded his trust, in that he never made any inventory of the estate of the plaintiff coming to his hands until December 4, 1893, and wholly failed and refused to perform his duties as such guardian, and in the year 1887 left the state of Minnesota, and did not return until the year 1892, but the plaintiff did not learn of his return to the state until October, 1893. That plaintiff became of age on August 3, 1891, and on October 30, 1893, filed a petition in the probate court in the matter of such guardianship, for the purpose of compelling Noel to settle his accounts as such guardian, and he was duly cited by the

court to appear and file his account. That such further proceedings were had in such court that on December 4, 1893, the court made its order settling such account, wherein it was adjudged that there was due from Noel, as such guardian, to the plaintiff a balance of $533.88, with interest at 6 per cent. from January 30, 1885, and that he pay the same within 10 days thereafter. That Noel appealed from this order to the district court; and on March 3, 1894, the order was by such court affirmed, and judgment entered therein in favor of the plaintiff, and against Noel, for the sum of $829, no part of which has ever been paid. That March 9, 1890, the surety John Heinrich died, seised of real and personal estate, and leaving a will, whereby he devised and bequeathed all of his property to the defendants Julius J. Heinrich, Gustav J. Heinrich, Antonia Oswold, Siegmund J. Wiedenbeck, Adolph C. Heinrich, and Nina Egle, the first three named being his children and only heirs at law. His will was admitted to probate in Hennepin county on April 28, 1890, and executors thereof appointed; and on May 2, 1890, the probate court made its order requiring all persons having claims against the estate to present them on or before December 30, 1890. Publication of this order was completed June 2, 1890; and on January 25, 1894, the estate was distributed to and received by the above-named defendants, who are now in the possession of it. That on February 24, 1892, William Massolt, the other surety, died, intestate, seised of real and personal estate; and his estate was duly administered and settled in the probate court of the county of Hennepin; and on March 30, 1892, the court made its order requiring all claims against the estate to be presented on or before the first Monday in October, 1892, and notice of such order was duly given; and thereafter, and on September 2, 1893, it made its decree of distribution whereby such estate was assigned to and was received by his next of kin and heirs at law, the defendants herein, other than the devisees and legatees of John Heinrich, hereinbefore specially named, who are now in possession of the same.

Upon this state of facts, the plaintiff seeks to recover from the defendants, as legatees and distributees of the sureties, respectively, his claim, not exceeding the value of the property received by them as such, under the provisions of G. S. 1894, c. 77. The most serious reason urged by respondents why the complaint does not

state a cause of action is that the claim was provable against the estates of the respective sureties, and, not having been so presented, it is barred.    This involves two question:    (1) Was the claim a contingent one until after the time within which it could be presented to the probate court and allowed had expired?    (2) If so, was the plaintiff bound to present it for allowance to the probate court, and, failing to do so, is this action barred?

1. A contingent claim is one where the liability depends upon some future event, which may or may not happen, and therefore makes it wholly uncertain whether there ever will be a liability. Sargent v. Kimball, 37 Vt. 320.    Now, save in exceptional cases, a suit on a guardian's bond against the sureties cannot be maintained without a previous liquidation of the amount due from the guardian by a settlement of his accounts.    Such an accounting is an equitable, and not a legal, proceeding.    It involves, not only items of debit and credit, but considerations as to the propriety of charges and investments and allowances for compensation.    2 Brandt, Sur. § 574;  Allen v. Tiffany, 53 Cal. 16;  Murray v. Wood, 144 Mass. 195, 10 N. E. 822;  Tudhope v. Potts, 91 Mich. 490, 51 N. W. 1110.    In this case no final settlement of the guardian's account was made, although the plaintiff pursued the matter with reasonable diligence after he became of age, until long after the time for presenting claims against the respective estates of the sureties had expired. Until after the expiration of that time, it was a matter of uncertainty whether the plaintiff ever would have such a claim.    It depended upon the contingency of a liquidation of the guardian's account.    The plaintiff's claim then depended upon a future uncertain event, for it might happen that by reason of losses in investments, for which the guardian was not responsible, or by advances to or expenses incurred for his ward, a final accounting would show that there was nothing due from the guardian.    It is clear that the plaintiff's claim was a contingent claim, incapable of liquidation until it became absolute by a settlement of the guardian's account. McKeen v. Waldron, 25 Minn. 466.

2. The plaintiff's claim did not become absolute and liquidated until long after the time for presenting claims against the estates of the deceased sureties, or either of them, had expired, and the estates settled and distributed to the defendants, as heirs and dev-

isees. Is this action then barred because the plaintiff did not present the claim to the probate court for allowance?

The answer involves a construction of sections 104, 107, and 110 of the Probate Code (G. S. 1894, §§ 4511, 4514, 4517), which read as follows:

"Sec. 104. All claims arising upon contracts, whether the same be due, not due, or contingent, must be presented to the probate court within the time limited in said order, and any claim not so presented is barred forever; such claim or demand may be pleaded as an offset or counterclaim to an action brought by the executor or administrator. All claims shall be itemized, and verified by the claimant, his agent or attorney, stating the amount due, that the same is just and true, that no payments have been made thereon which are not credited, and that there are no offsets to the same to the knowledge of affiant. If the claim be not due, or be contingent, when presented, the particulars of such claim must be stated. The probate court may require satisfactory vouchers or proofs to be produced in support of any claim."

"Sec. 107. No action at law for the recovery of money only shall be brought in any of the courts of this state against any executor, administrator or guardian upon any claim or demand which may be presented to the probate court except as provided in this Code. No claim against a decedent shall be a charge against or lien upon his estate unless presented to the probate court as herein provided within five years after the death of such decedent: Provided, that this provision shall not be construed as affecting any lien existing at the date of such death. Provided further, that said provision shall not be construed as affecting the right of a creditor to recover from the next of kin, legatee or devisee to the extent of assets received. This provision shall be applicable to the estate of persons who died prior as well as those who may die after adoption of this Code."

"Sec. 110. Upon the allowance or disallowance of any claim the court shall make its order allowing or disallowing the same. The order shall contain the date of allowance and the amount allowed, the amount disallowed, and be attached to the claim with the offsets if any."

·Section 102 of such Code (see G. S. 1894, § 4509) also provides that no claim shall be received or allowed by the court unless presented within 18 months from the time when notice of the order to present claims is given.

These sections and G. S. 1894, c. 77, §§ 5918–5925, inclusive, are to be construed together and in harmony with the general policy of our laws that all of a decedent's property not exempt is equitably charged with the payment of his debts; and we ought so to con· strue them as to afford every creditor an adequate remedy to secure the payment of his claim out of such property. If the plaintiff could have presented his claim to the probate court, and thereby secured its payment from the estates of the sureties in the ordinary course of administration, this action is barred; otherwise not. Hill v. Nichols, 47 Minn. 382, 50 N. W. 367; McKeen v. Waldron, 25 Minn. 466.

If section 104 is construed literally, it would include, not only the plaintiff's claim, but all claims of every kind arising upon contract. Its language is, "all" claims arising upon contracts, whether the same be due, not due, or contingent. These three classes include all possible claims growing out of contracts. If there are no implied exceptions in this statute as to any class of contingent claims, then, if a person dies who was a stockholder in a corporation, or had conveyed lands by a warranty deed, or signed official bonds as a surety, or given leases for a term of years, with covenants to indemnify the lessee against damages by water from the pipes on the demised premises, creditors, obligees, and covenantees who would not be forever barred of all right to any redress against his property must hasten to the probate court, and prove their claims, within the 18 months from the giving notice of the order limiting the time to press its claims against the estate. How can they be proved? Counsel for respondent answers: "State the particulars of the claim under the provisions of section 104." But, until a contingent claim becomes absolute, the amount thereof cannot be liquidated, so that it can be allowed by the court, and the amount thereof stated in the order allowing it, as required by section 110.

But let us assume that, in order to entitle a contingent claim to be allowed, it is not necessary that it should first become absolute

and capable of liquidation. Still, we are confronted with the question, how shall it be paid? The statute provides for the payment of all claims which are certain and liquidated, whether due or not due; also for contingent claims which become absolute and capable of liquidation within the 18 months allowed for the presentation and proof of claims, for, if they become absolute within the limited time, they can be paid as other claims; but, for claims which are contingent when this time expires, there is absolutely no provision of the statute for their payment, or provision for retaining in the control of the court any funds to pay them in the future in case they become absolute, or for suspending the settlement of the estate until that event occurs, if ever.

It is not to be presumed that the authors of the statute intended to provide for the proof of claims against a decedent's estate, and bar all subsequent action thereon if they were not so proved, and provide no possible way for their payment. It would have been impracticable to have attempted to provide for the future payment of claims which were contingent and unliquidated when the time for allowing claims expired, for it would be impossible to determine how much it would be necessary to retain from the funds and property of the estate to pay such claims in the future, and equally impracticable to have provided for a suspension of the settlement of the estate and the distribution of the residue until it was determined whether such claims were absolute or not. It is manifest that the omission from the Probate Code of all provisions for the payment of this class of claims was intended, because it was wholly impracticable to make any provision for them.

But concede that the probate court has the inherent power to retain in court the amount of an unliquidated contingent claim; how much must be retained? How would it be possible to determine the matter? Or, if the settlement of the estate is to be continued until the claim can be determined, then for how long a time? If this can be done, then the covenantee of the deceased party in a warranty deed may suspend the settlement of the estate indefinitely, without regard to the probability of anything ever becoming due on the covenant. Section 104 must be given a reasonable, and not a literal, construction, which, as we have seen, would lead to absurd and unjust results. Clearly, it was not the intention to bar claims

for the payment of which no possible provision was or could be made, nor to repeal as to claims arising on contracts. G. S. 1894, §§ 5918–5925.

The second proviso to section 107 is an express recognition of the fact that not all contingent claims arising on contracts which are not presented under the provisions of section 104 are barred, for it reads: "Provided, further, that said provision shall not be construed as affecting the right of a creditor to recover from the next of kin, legatee, or devisee to the extent of assets received." If all claims arising on contracts due, not due, and contingent were barred by section 104, what possible purpose could this proviso serve? It was not intended to preserve the right to maintain an action on a claim growing out of a tort, for section 104 refers to claims on contracts only. Then to what claims does the proviso refer? Clearly, to those for the liquidation and payment of which no provision has been made by the statute, because it was wholly impracticable to make any such provision. McKeen v. Waldron, supra; In re Martin's Estate, 56 Minn. 420, 57 N. W. 1065; Bullard v. Moor, 158 Mass. 418, 33 N. E. 928.

The manifest meaning of section 104, when read with reference to the settled law and practice of the state before its passage, and in connection with all the other provisions of the statute to which we have referred, and in view of the practical impossibility of providing for claims which are contingent and unliquidated when the time for proving claims expires, is that such claims are not barred if not presented to the probate court. This section means that all contingent claims which become absolute and capable of liquidation, whether due or not before the expiration of the time limited for proving claims, must be so presented, or they are barred; but that all contingent claims may be presented to the probate court with a statement of the particulars of such claims, and those which become absolute and capable of liquidation within the time limited for proving claims are to be allowed and paid as other claims, but those that do not thus become absolute cannot be allowed or paid, and the settlement and distribution of the estate proceeds as if they had never been filed. When such claims become absolute, if ever, an action to recover the amount thereof from the heirs, legatees, and distributees of the decedent, under the provisions of G. S. 1894, c.

77 is not barred. The plaintiff's claim falls within this last class. Although there was a breach of the bond before the expiration of the time for proving claims, as we have seen, whether there would ever be anything due from the sureties of the guardian, or how much, depended upon the result of a settlement of his accounts as such guardian, and the claim did not become absolute and liqui- dated until the judgment settling the account.

3. It is further claimed by respondents that the complaint should have alleged that the action on the bond was brought by the per- mission and direction of the judge of probate. The obtaining of such permission is no part of the plaintiff's cause of action. Litch- field v. McDonald, 35 Minn. 167, 28 N. W. 191. It follows that the objection that such permission was not obtained before the action was brought cannot be reached by demurrer.

4. It is also claimed by respondents that the demurrers were properly sustained, because the complaint does not allege the value of the property received by the defendants as distributees and leg- atees. It would seem that the defendants would know more about this matter than the plaintiff, and, if the value of the estate re- ceived by them was less than plaintiff's demand, they should set up the fact in their answers; but we do not so decide. The complaint does allege that the residue of the estates was distributed to and received by the defendants, and it, therefore, certainly states a cause of action for nominal damages, if for nothing more.

Orders sustaining the demurrers reversed.